# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

DIANE CHEATHAM,             )
                             )
        Plaintiff,          )
                             )
v.                            )     No.:  3:10-CV-541
                             )            (VARLAN/GUYTON)
LIEUTENANT JEANETTE HARRIS,  )
                             )
        Defendant.     )

## MEMORANDUM OPINION

This civil rights action is before the Court on the Motion for Summary Judgment on Behalf of Defendant Jeanette Harris ("Officer Harris") [Doc. 21], in which she submits that there are no genuine issues of material fact regarding plaintiff's claims in this case and that she is entitled to judgment as a matter of law, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Diane Cheatham, has filed a response in opposition [Doc. 27]. The Court has reviewed the motion and the parties' responsive and reply briefs, along with the supporting affidavits, depositions, and exhibits, including the audio recording submitted by Officer Harris [Docs. 21, 22, 27, 29]. After careful consideration, and for the reasons explained herein, the motion for summary judgment [Doc. 21] submitted by Officer Harris will be **GRANTED**, plaintiff's federal claims will be **DISMISSED WITH PREJUDICE** and because there is no compelling reason to support this Court's continued jurisdiction of plaintiff's remaining state law claims, those claims will be **DISMISSED WITHOUT PREJUDICE** and this case will be **CLOSED**.

## I.    Facts

This case arises out of an interview of plaintiff by three Knox County Sheriff's Department ("KCSD") officers, Officer Harris, Miranda Spangler ("Officer Spangler"), and Greg Faulkner ("Officer Faulkner") [Doc. 1, ¶¶ 1-5; Doc. 21-2, pp. 56-57, 179; Doc. 21-4]. The interview occurred during the course of KCSD's criminal investigation of a man, Mr. Robinson, for alleged possession of child pornography and sexual exploitation of a minor [Doc. 21-2, pp. 56-57, 179].

Plaintiff became acquainted and intimately involved with Mr. Robinson in June 2010 when he performed work for her and moved into the home of plaintiff and her fourteen-year old daughter, Kyla [*Id.*, pp. 26, 57-61].  Around September 13, 2010, plaintiff became suspicious that Mr. Robinson was making purchases on her late father's credit card [*Id.*, p. 66].  After searching Mr. Robinson's belongings, plaintiff found her father's credit card and several pairs of little girl's underwear [*Id.*, pp. 66-67, 80-81, 197-98].  Plaintiff testified that her discovery prompted her to search Mr. Robinson's computer where she found multiple pictures of "naked little girls," after which she immediately contacted the police [*Id.*, p. 68].

KCSD officers arrived at plaintiff's house, searched Mr. Robinson's belongings, including his computer and his van, discovering thousands of pornographic images of minors on the computer and several additional pairs of little girl's underwear in the van [*Id.*, pp. 69-70, 77, 153-54].  Plaintiff told the officers she wanted Mr. Robinson and his belongings removed from her home [*Id.*, p. 73].  The next day, an employee of the Department of Children's Services ("DCS") interviewed Kyla to determine whether Mr. Robinson had

inappropriate contact with the child [*Id.*, p. 79]. The DCS employee determined that Mr. Robinson had not had inappropriate contact with Kyla [*Id.*, pp. 85, 94-96].

On September 15, 2010, plaintiff met Mr. Robinson at a local park [*Id.*, pp. 87-88]. After about 30 to 45 minutes, KCSD officers, including Office Faulkner, arrived at the park to arrest Mr. Robinson [*Id.*, pp. 96-98, 100]. The officers detained Mr. Robinson and placed him in the back of a police car [*Id.*, p. 101]. Plaintiff requested and was allowed to speak with Mr. Robinson. During their conversation, which was recorded by Officer Faulker, plaintiff advised Mr. Robinson "to be quiet and only speak with an attorney." [*Id.*; Doc. 21-1, pp. 26-28]. Officer Harris testified that Officer Faulkner then called her to suggest that Officer Faulkner assist in determining whether plaintiff was involved in Mr. Robinson's alleged misconduct [Doc. 21-1, pp. 27-28].

On September 16, 2010, plaintiff brought her computer to the Knoxville Family Justice Center for a forensic analysis [Doc. 21-2, p. 110]. While at the Justice Center, KCSD officers asked plaintiff to step inside a small office to speak to Officer Harris, Officer Spangler, and Officer Faulkner [*Id.*, pp. 110-11, 138].[1] Plaintiff testified that she voluntarily entered the approximately 10-by-12-foot office which contained a round table and desk [*Id.*, pp. 151-152; Doc. 27, p. 3]. Plaintiff testified that she sat down at the table approximately three and a half feet from Officer Harris [Doc. 21-2, pp. 136, 174]. Officer Faulkner sat behind the desk and Officer Spangler stood next to the desk [*Id.*, pp. 136-37].

---

[1]Plaintiff made a diagram of the office during her deposition [*See* Doc. 21-5].

3

According to Officer Harris, plaintiff acted in a loud and erratic manner during the approximately 19-minute long interview, particularly toward the end of the interview [Doc. 21-4; Doc. 21-5; Doc. 21-6]. Plaintiff testified about her behavior during the interview as follows:

Q.     Fifteen minutes in. Anything [objectionable] happen yet? Have you been touched?

A.     No, I have not been touched.

Q.     Are you raising your voice there?

A.     There, probably a little bit.

Q.     15:08, you are raising your voice. Is that you screaming, "I date one fucking guy and he turns out to be the devil"?

A.     Yes.

Q.     That's the third instance of a vulgar and profane term, and that, again, is coming from your mouth, isn't it?

A.     Yes, sir.

Q.     All right. And you have raised your voice by this point?

A.     So has [Officer Harris].

Q.     You raised your voice by this point, correct?

A.     Yes.

[Doc. 21-2, p. 158]. Plaintiff testified that toward the end of the interview, she was crying and screaming, and at one point, brought her hand down hard on the table when she rose to

4

exit the office [*Id.*, pp. 159-60,172-74].  Regarding her behavior during this portion of the interview, plaintiff testified as follows:

> Q.    Is that [Officer] Harris telling you to calm down?
>
> A.    Yes.
>
> Q.    Because you're the only one screaming at that point, right?
>
> A.    Because [Officer Harris] was arguing with me and upsetting me.
>
> Q.    Because you are screaming, right? That's why you needed to calm down?
>
> A.    Okay.
>
> Q.    You agree with that, right?
>
> A.    The way you worded it, yeah.
>
> (Audio played.)
>
> Q.    That's you screaming, "why don't you stop interrogating me like I did something wrong," right?
>
> A.    Yes, it is.
>
> (Audio played.)
>
> Q.    Is that you screaming, "I did not know, I did not know"?
>
> A.    Yes, it is.
>
> Q.    Have you been touched at this point?
>
> A.    Not this point.

[Doc. 21-2, pp. 160-61].

Plaintiff testified that Officer Harris stood up from the table and that as plaintiff reached for the door to leave the office, Officer Harris "grabbed" her arm, "threw [her] against the wall," spun her around, and placed her arms on plaintiff's upper arms while also pushing her really hard [*Id.*, p. 167-68]. Plaintiff testified that Officer Harris released her arms, but when plaintiff tried again to leave the office, Officer Harris touched her again while twisting plaintiff's arm backwards [*Id.*, pp. 167-69]. Plaintiff testified that the first touching by Officer Harris lasted approximately 22 seconds and that the second touching lasted approximately 2 to 3 seconds [*Id.*, p. 169]. At her deposition, Plaintiff testified that after the interview, she went to the emergency room for an evaluation and was discharged that same day.

Following these events, plaintiff filed this civil rights action against Officer Harris, alleging that Officer Harris violated her constitutional right to be free of the use of excessive force [Doc. 1]. Plaintiff also alleges that Officer Harris is liable under Tennessee common law for assault and kidnaping [*Id.*]. Plaintiff alleges in her response to Officer Harris's motion for summary judgment that Officer Harris prodded, interrogated, and badgered plaintiff about emotional and sensitive issues during the interview to the point that her fragile emotional state could not withstand any further abusive interrogation [Doc. 27, p. 2]. Plaintiff's response to Officer Harris's motion for summary judgment contains no arguments in regard to her state-law claims.

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or

7

determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Plaintiff alleges civil rights claims against Officer Harris pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, arguing that Officer Harris's conduct during the interview constitutes excessive force because plaintiff was subject to physical abuse, including being slammed against the wall, touched, assaulted, and held against her will, and because plaintiff was prodded and interrogated about emotional issues while in a fragile emotional state. Plaintiff also alleges that she went to the emergency room after the interview and that medical records show that she suffered physical injury as a result of her encounter with Officer Harris.

### A. Plaintiff's Medical Records are Inadmissible

Contemporaneous with her response to Officer Harris's motion for summary judgment, plaintiff submitted medical records that purport to document plaintiff's visit to an emergency room on September 17, 2010, two days after plaintiff's interview with Officer Harris [Doc. 27-2]. In reply, Officer Harris submits that the medical records are unauthenticated and constitute inadmissable hearsay. Officer Harris also notes that, to the

8

extent the medical information contained in the unauthenticated medical records are the opinions of medical providers, plaintiff has not disclosed any experts by the deadline in the Court's scheduling order [Doc. 10], and it therefore appears that plaintiff will be unable to present admissible evidence at trial that is probative of injuries plaintiff allegedly sustained following the interview with Officer Harris [*Id.*].[2]

Rule 56 of the Federal Rules of Civil Procedure requires parties to support their factual assertions with admissible evidence, *see* Fed. R. Civ. P. 56(c), (e), and therefore contains a general requirement that materials cited in support of or in opposition to a motion for summary judgment be admissible in evidence. *See Sperle v. Mich. Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact."). Subdivision (c)(2) of Rule 56 provides a mechanism by which a party may object that material cited to support a fact in a motion for summary judgment that has not been presented in an admissible form to create a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2). Once raised, this objection shifts the burden to the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated at trial. *See Smith v. Interim Healthcare of Cincinnati, Inc.*, No. 1:10-cv-582, 2011 WL 6012971, at *4 (S.D. Ohio Dec. 2, 2011) ("The burden is on the proponent to show

---

[2]The trial of this matter is set for August 6, 2012.

9

that the material is admissible as presented or to explain the admissible form that is anticipated.").

Plaintiff's response to Officer Harris's motion for summary judgment consists of an affidavit by plaintiff and medical records which include what purports to be an evaluation of plaintiff's physical condition following her interview with the officers. These medical records [Doc. 27-2] do not meet plaintiff's burden to submit a fact in an admissible form to create a genuine issue of fact. The medical records submitted by plaintiff are not authenticated as required under Federal Rule of Evidence 901. *See* Fed. R. Evid. 901. In addition, besides the allegations contained in her complaint, the unauthenticated medical records are the only evidence plaintiff has submitted regarding her medical conditions. Furthermore, the Court also notes that at her deposition, plaintiff testified that the x-rays taken during her emergency room visit were normal and she affirmed that there were no fractures or subluxations found during the visit and no specific injuries [Doc. 21-2, pp. 125-26]. Thus, these unauthenticated medical records, together with the allegations of the complaint and plaintiff's deposition testimony, do not create a genuine dispute of material fact regarding whether plaintiff was injured. *See Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (stating that, at summary judgment, the plaintiff has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial" and that an issue of fact is "genuine" only if a reasonable jury could find for the plaintiff).

### B.     42 U.S.C. §§ 1985, 1986

Officer Harris has moved for summary judgment in regard to plaintiff's claims under 42 U.S.C. §§ 1985 and 1986. Section 1986 provides a cause of action against persons who have knowledge of and who fail to prevent or aid in preventing the commission of a civil rights conspiracy violation, pursuant to § 1985. *See* 42 U.S.C. §§ 1985, 1986. Thus, to assert a cause of action under § 1986, a plaintiff is required to assert a cause of action under § 1985. *See, e.g., Estate of Bing v. City of Whitehall, Ohio*, 373 F. Supp. 2d 770, 785 (S.D. Ohio 2006) ("To effectuate a cause of action under § 1986, a plaintiff must state a cause of action under § 1985."). Plaintiff's response offers no argument in support of these claims.

The complaint contains no allegation that Officer Harris's alleged use of excessive force was motivated by racial or other class-based animus to support a conspiracy claim under § 1985 and § 1986. *See Bass v. Robertson*, 167 F.3d 1041, 1050, n.5 (6th Cir. 1999) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)) (holding that summary judgment was appropriate as to the plaintiff's § 1985 and § 1986 claims when the plaintiff failed to allege or produce any evidence of racial motivation for the alleged use of excessive force). There is also no evidence in the record to support or suggest that Officer Harris's use of excessive force was motivated by improper discrimination. Accordingly, to the extent plaintiff alleges that her civil rights claims against Officer Harris are actionable under § 1985 and § 1986, Officer Harris is entitled to summary judgment and those claims will be dismissed as a matter of law.

11

### C.    42 U.S.C. § 1983

Plaintiff also alleges that Officer Harris violated her Fourth Amendment right to be free from the use of excessive force.  Officer Harris has moved for summary judgment on the basis of qualified immunity because she submits that she did not commit a constitutional violation of excessive force because her conduct during the interview was objectively reasonable and did not violate a clearly established right of plaintiff.

### 1.    Qualified Immunity

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation"; it is "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1986); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citation omitted).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (citation omitted). "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 518-19 (6th Cir. 2010) (citations omitted).

A three-step analysis is employed by the Sixth Circuit of the United States Court of Appeals for analyzing claims of qualified immunity.  First, a court determines whether, "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff

show that a constitutional violation has occurred"; second, a court considers "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and third, a court determines "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Holzemer*, 621 F.3d at 519 (citations omitted). There is no requirement that this inquiry be performed in sequence, *id.* (citing *Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 813 (2009)), and if a plaintiff fails to establish any one element, the defendant's request for qualified immunity must be granted, *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citation omitted). In analyzing a summary judgment motion based on qualified immunity, a court must adopt the plaintiff's version of the facts. *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) (citation omitted). Granting summary judgment on the basis of qualified immunity is inappropriate if there is a factual dispute involving an issue on which the question of immunity turns or if the undisputed facts show that a defendant's conduct did indeed violate clearly established rights. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citations omitted).

### 2. Whether a Constitutional Violation Occurred

The primary question in determining whether Officer Harris is entitled to qualified immunity is whether the officer violated plaintiff's constitutional right to be free from excessive force during the interview. Specifically, the parties focus on the last several

13

minutes of the interview when Officer Harris touched plaintiff a total of approximately 25 seconds and detained plaintiff from leaving the room for less than two minutes.

Claims regarding a police officer's use of excessive force in the context of an arrest or other seizure are governed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989).[3] In *Graham v. Connor*, the United States Supreme Court established guidelines to be followed by lower courts in evaluating excessive force claims in the course of an arrest, investigatory stop, or other seizure of a free citizen. Because these claims involve seizures, the Fourth Amendment's objective "reasonableness" test is the appropriate standard for such claims. *Graham*, 109 U.S. at 394-95. This standard requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 395 (internal quotations and citation omitted). Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it[,]" and the test of reasonableness requires careful attention to the facts and circumstances of each case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting or attempting to evade arrest. *Id.* at 396. *See*

---

[3]Because "[t]he Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest of investigatory stop of a free citizen, while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences[,]" summary judgment for Officer Harris is appropriate to the extent plaintiff alleges the officer violated her Eighth Amendment rights because it is clear from the facts of this case that plaintiff was neither convicted of a crime, nor a prisoner when the alleged civil rights violations occurred.

14

*Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (noting that the question is whether the totality of the circumstances justifies the particular sort of seizure).

As stated by the Supreme Court:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 109 U.S. at 396 (internal quotations and citations omitted); *see also Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (noting that the standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case"). Thus, under *Graham*, courts reviewing excessive force claims "must avoid substituting . . . personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policeman face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000) (reversing the district court's denial of summary judgment on an excessive force claim and holding that the officers were entitled to qualified immunity) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)). Finally, at the summary judgment stage, and once the relevant set of facts are determined and all inferences are drawn in the plaintiff's favor, the question of whether an officer's actions

15

were "objectively unreasonable" is a pure question of law. *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (citations omitted).

To the extent plaintiff challenges Officer Harris's touching or detention during the interview on the basis that the touching or detention was unjustified or unreasonable in length and type, and that she was held in the office against her will, the Court does not find this conduct to create a genuine issue of material fact that a constitutional violation occurred. Rather, the undisputed facts show that Officer Harris had probable cause to arrest plaintiff for disorderly conduct, an offense under Tennessee law. According to the statute, a person commits the offense of disorderly conduct who:

> (a) . . . in a public place and with intent to cause public annoyance or alarm:
>
> > (1) Engages in fighting or in violent or threatening behavior;
> >
> > (2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or
> >
> > (3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
>
> (b) A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.
>
> . . . .

Tenn. Code Ann. § 39-17-305.

Here, the audio recording of plaintiff's interview, and her deposition testimony about her conduct during the interview, support a charge of disorderly conduct or, at the least, a

determination that Officer Harris held a reasonable belief at the time of the interview that plaintiff was committing the offense of disorderly conduct. *See State v. Mitchell*, 343 S.W.3d 381, 390-91 (Tenn. 2011) (holding that a defendant's aggressive, threatening, and belligerent behavior toward police officers at a rally, coupled with a challenge to an officer's authority, was sufficient to support a conviction under Tenn. Code Ann. § 39-17-305). Reviewing the record as a whole, including plaintiff's deposition testimony, plaintiff's affidavit, and the audio recording, a reasonable officer could have concluded that by screaming and yelling profanities in a public place, plaintiff was making unreasonable and loud noises which prevented others from carrying on lawful activities, conduct which meets the elements of a violation of Tenn. Code Ann. § 39-17-305(b). Plaintiff testified at her deposition that prior to the first touching by Officer Harris, she was angry, screaming, and crying [Doc. 21-2, pp. 158, 160-61]. Officer Harris testified at her deposition that plaintiff's behavior was "erratic" and "enraged" and testified that she elected to briefly detain plaintiff because:

> I wasn't going to let her leave in that manner from that office, because there's children all up and down that hallway every day. So I didn't want her to leave because she was so upset, and I was trying to like tell her to calm down and all of that kind of thing, but she was so offended by what I said, she couldn't like bring herself back down to even have a normal conversation.

[Doc. 21-1, p. 45:9-17]. The Court has also reviewed the audio recording of plaintiff's interview with Officer Harris, particularly the last five minutes, and notes that both plaintiff and Officer Harris were speaking in raised voices, that plaintiff screamed a number of times,

yelled profanities, and stated loudly that Officer Harris was assaulting her. The Court also notes that Officer Harris repeatedly asked plaintiff to calm down.

Upon review, and judging Officer Harris's conduct from the perspective of a reasonable officer at the time of the incident in question, the Court finds that the circumstances of the interview indicate that Officer Harris had probable cause to arrest plaintiff for disorderly conduct due to the loud, profane, and unreasonable noises plaintiff was making in a public place.

In addition, assuming Officer Harris asked plaintiff "insinuating questions" which caused plaintiff to be upset and aggravated her fragile emotional state, followed by pushing plaintiff against the wall while grabbing her arm and causing it to become bruised, the record as a whole, particularly plaintiff's deposition testimony, shows it was objectively reasonable for Officer Harris to act to briefly restrain plaintiff. In her deposition testimony, plaintiff admits to screaming, yelling, bringing her hand down hard on the table, and that Officer Harris asked her several times to calm down [Doc. 21-2, pp. 174-75, 160]. From a review of the audio recording, it is also clear that plaintiff's voice was raised to the point of screaming, that plaintiff was using profanity, and that Officer Harris repeatedly asked plaintiff to calm down.

"The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Here, Officer Harris was confronted with an individual who was clearly very upset regarding the situation concerning Mr. Robinson and his arrest, particularly the issues

surrounding whether Mr. Robinson acted improperly toward plaintiff's daughter. As shown from plaintiff's deposition and the audio recording, as the interview progressed, plaintiff began to repeatedly curse, despite being told to desist, and began yelling loudly and crying, in addition to bringing her hand down hard on the table and interrupting Officer Harris when the officer asked plaintiff to calm down. Plaintiff did not stop when Officer Harris told her that if she did not cease yelling and using profane language, that she would be placed under arrest. Rather, plaintiff yelled again, including stating that she was being assaulted, refused to calm down, and yelled that she was leaving the office. At this point, it was objectively reasonable for Officer Harris to conclude that a brief show of force was necessary to ensure that plaintiff would comply with the order to calm down before walking out of the office in an enraged state while also yelling profanities. *See, e.g., Thacker v. Lawrence Cnty.*, 182 F. App'x. 464, 472 (6th Cir. 2006) (holding that summary judgment was appropriate to officers for alleged use of force during the course of the plaintiff's arrest for disorderly conduct where the plaintiff and the two officers fell to the ground and struggled with the plaintiff after the officers had grabbed the plaintiff to handcuff him); *Bockoven v. Watts*, No. 3:09-CV-0802, 2011 WL 704832, at *1, *3-4 (M.D. Tenn. Feb. 18, 2011) (granting summary judgment to the defendant officer on the plaintiff's excessive force claim arising out of the plaintiff's arrest for disorderly conduct where the defendant officer pushed the plaintiff face-first against his patrol car when the officer stated that the plaintiff was resisting and jumping around); *Overton v. Hamilton Cnty.*, No. 1:08-CV-278, 2009 WL 2601848, at *3 (E.D. Tenn. Aug. 24, 2009) (granting summary judgment to the defendant officer on the

plaintiff's excessive force claim arising out of a disorderly conduct arrest where the pregnant plaintiff continued to resist and use loud and profane language despite the officer's orders for her to calm down, resulting in the officer's decision to use pepper spray and to take the plaintiff to the ground in a controlled fall); *Crowel v. City of Madisonville*, No. 3:06-CV-060, 2007 WL 2043879, at *4, *20-*21 (E.D. Tenn. July 12, 2007) (granting summary judgment to the defendant officers for pulling the plaintiff's arms and legs in different directions while attempting to handcuff him for disorderly conduct in a store where the plaintiff disregarded the officers' instructions for him not to leave).

Moreover, according to plaintiff's own deposition testimony, Officer Harris's first touching lasted 22 seconds, her second touching lasted 2 to 3 seconds, and plaintiff was detained against her will for less than two minutes. While the facts of this case do indicate that plaintiff was clearly, visible, and audibly upset with Officer Harris's line of questioning, the facts do not show that Officer Harris's use of force by touching plaintiff for a total of less than thirty seconds and restraining her from leaving the room for a period of less than 2 minutes were attempts to injure plaintiff and exercise excessive force rather than reasonable attempts to control plaintiff to ensure her own safety, the safety of the other officers, the safety of the public, and to calm plaintiff down before allowing her to leave.

The evidence in the record also does not indicate that Officer Harris used more force than was necessary to subdue plaintiff. The Court has not been presented with evidence that plaintiff was calming down or submitting to Officer Harris's show of force so that the touching or detention would have been unnecessary. Rather, both plaintiff's and Officer

Harris's depositions, along with the audio recording, show that plaintiff continued to resist, scream, use profane language, and attempt to leave the office despite Officer Harris's repeated requests for plaintiff to calm down and stop screaming [Doc. 21-6].

In sum, the Court finds that the totality of the circumstances, based on the perspective of a reasonable officer, do not indicate that Officer Harris's conduct in using some physical force to restrain plaintiff violated her constitutional right to be free of excessive force or that Officer Harris's conduct was unreasonable.

### 3. Whether the Right Was Clearly Established

An individual's right to be free from excessive force by law enforcement is a clearly established right, *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2007), but "it is not enough that a plaintiff establishes that the defendant's use of force was excessive under the Fourth Amendment. To defeat qualified immunity, the plaintiff must show that the defendant had notice that the manner in which the force was used had been previously proscribed." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403-04 (6th Cir. 2007) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)).

Here, even if Officer Harris's use of force was excessive, she would still be entitled to qualified immunity because plaintiff has not demonstrated that the force used was clearly established in a "particularized" sense such that it would be clear to a reasonable officer that her conduct was unlawful in the particular situation presented in this case. *Saucier v. Katz*, 533 U.S. 194, 201-22 (2001). Plaintiff has identified no case law indicating that Officer Harris should have been aware that it was unconstitutional to use the amount of force she

21

used to detain plaintiff, an individual who had voluntarily agreed to be questioned regarding the commission of a serious crime and who, during the questioning, had begun screaming, yelling profanities, and disregarding the officer's request to calm down.

In sum, the Court does not find that plaintiff has presented evidence of a genuine issue of fact that her right to be free from excessive force was clearly established at the time of her interview with Officer Harris. Accordingly, the Court finds that Officer Harris is entitled to qualified immunity.

### D.    State Law Claims

Plaintiff alleges state law tort claims of assault and kidnaping.[4]  The Court's analysis of plaintiff's federal civil rights claims, however, effectively disposes of those claims over which this Court has original jurisdiction.  While the Court has broad discretion under 28 U.S.C. § 1367(c)(3) to dismiss or to retain jurisdiction over pendent state law claims under these circumstances, "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment."  *Thacker v. Lawrence Cnty.*, 182 F. App'x 464, 472 (6th Cir. 2006) (quoting *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001)).  *See, e.g., Jackson v. Town of Caryville, Tenn.*, Nos. 3:10-CV-153, 3:10-CV-240, 2011 WL 5143057, at *10 (E.D. Tenn. Oct. 28, 2011).  Thus, pursuant to § 1367(c), and in the exercise of its discretion and in the interests of comity, the Court will decline to exercise continuing "pendent" or supplemental jurisdiction

_____

[4]It is assumed that plaintiff's claims for assault and kidnaping are of the tort variety rather than criminal allegations.

over plaintiff's remaining state law claims.  28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26 (1966); *Brandenburg*, 253 F.3d at 900 ("In fact, the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment.").  As no compelling facts support this Court's continued jurisdiction of plaintiff's remaining state law claims, those will be dismissed as well.

## IV.     Conclusion

For the reasons explained herein, the Motion for Summary Judgment on Behalf of Defendant Jeanette Harris [Doc. 21] will be **GRANTED** in that the Court finds summary judgment in favor of Officer Harris appropriate as to all of plaintiff's federal civil rights claims brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 for alleged use of excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments.  Plaintiff's federal causes of action are **DISMISSED WITH PREJUDICE** and plaintiff's state causes of action are **DISMISSED WITHOUT PREJUDICE**.  There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE